FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 16, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TONI B.,[1]

           Plaintiff,

     v.

CAROLYN COLVIN, Acting Commissioner of Social Security,[2]

          Defendant.

No.   1:24-CV-03098-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), she is hereby substituted for Martin O'Malley as the defendant.

Due to lumbar spine disease, right knee osteoarthritis, an umbilical hernia, asthma, obesity, depressive disorder, hoarding disorder, attention deficit hyperactivity disorder (ADHD) and personality disorder, Plaintiff Toni B. claims that she is unable to work fulltime and applied for supplemental security income benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of Thomas Genthe, PhD, and Marquetta Washington, ARNP; improperly assessed Plaintiff's credibility; and erred in finding that Plaintiff suffered from cannabis use disorder. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In November 2021, Plaintiff filed applications for benefits under Title 2 and Title 16, claiming disability beginning January 1, 2012,[3] based on the physical and mental impairments noted above.[4] Plaintiff's Title 2 claim was denied at the initial level because her date last insured was September 30, 2011.[5] Plaintiff's remaining Title 16 claim was denied at the initial and reconsideration levels.[6]

---

[3] This was later amended to November 11, 2021, as noted below.

[4] AR 183-194, 215.

[5] AR 91, 217.

[6] AR 95, 113.

1    After the agency denied Plaintiff benefits, ALJ Malcolm Ross held a

2  telephone hearing in August 2023, at which Plaintiff's representative appeared but

3  Plaintiff did not attend.[7]  A vocational expert testified.[8]  At the hearing, Plaintiff's

4  representative amended the alleged onset date to November 11, 2021.[9]

5    After the hearing, the ALJ issued a Notice to Show Cause, asking Plaintiff to

6  explain her absence from the hearing.[10]  Plaintiff filed a written response to the

7  Notice to Show Cause, but the ALJ found that the explanation given by Plaintiff in

8  her response was contradictory to her prior oral explanation to hearing staff, as

9  well as her attorney's statement at the hearing.[11] After receiving Plaintiff's

10  Response to Notice to Show Cause, the ALJ issued a decision denying benefits.[12]

11  The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the

12  medical evidence and the other evidence.[13] As to medical opinions, the ALJ found:

13

14

---

15  [7] AR 51-61.

16  [8] *Id.*

17  [9] AR 56.

18  [10] AR 186.

19  [11] AR 17, 192.

20  [12] AR 14-34.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines

21  whether a claimant is disabled.

22  [13] AR 23-26.

23

DISPOSITIVE ORDER - 3

- The opinions of state agency evaluators Bruce Eather, PhD, and Don B. Johnson, PhD, to be persuasive.
- The opinions of state agency physicians Robert Hander, MD, and Bonnie Lammers, MD, to be persuasive.
- The opinions of consultative examiner Marquetta Washington, ARNP, to be persuasive.
- The opinions of DSHS examining psychologist Thomas Genthe, PhD, to be unpersuasive.
- The opinions of DSHS non-examining psychologist Holly Pataja, PhD, to be unpersuasive.[14]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since November 11, 2021, the date of her application.
- Step two: Plaintiff had the following medically determinable severe impairments: lumbar spine degenerative disc disease; right knee osteoarthritis; umbilical hernia; asthma; obesity; depressive disorder; hoarding disorder; ADHD; personality disorder; and cannabis use disorder.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

---

[14] AR 25-26.

listed impairments and specifically considered Listings 1.15, 1.16, 1.18, 3.03, and 12.00.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

  frequent climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; never kneeling, crouching, or crawling; no exposure to extreme heat, extreme cold, or concentrated fumes, odors, dusts, gases, and poor ventilation; occasional contact with the public; work with a few coworkers and supervisors but not in large groups; and occasional, routine workplace changes.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a router (DOT 222.587-038), a marker (DOT 209.587-034), and a routing clerk (DOT 222.687-022).[15]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[16]

---

[15] AR 20-29.

[16] AR 193.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[17] and such error impacted the nondisability determination.[18] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19]

## III.    Analysis

Plaintiff seeks relief from the denial of disability on two grounds. She argues the ALJ erred when evaluating the medical opinions and when evaluating

––––––––––––––––––––––

[17] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[18] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[19] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1    Plaintiff's subjective complaints.[20]  As is explained below, the Court concludes that

2    the ALJ consequentially erred in his evaluation of the medical opinion evidence.

3    **A.    Medical Opinion: Plaintiff establishes consequential error**

4        Plaintiff argues the ALJ erred in his evaluation of the medical opinions.[21]

5    Specifically, Plaintiff first argues that the ALJ erred in finding the opinions of

6    Dr. Genthe to be unpersuasive because the ALJ's reasoning that Dr. Genthe's

7    examination was by telephone is flawed.[22]  Plaintiff also argues that the ALJ erred

8    in finding ARNP Washington's opinions persuasive because she did not diagnose

9    any disorder in Plaintiff's knee and later imaging established a severe impairment

10   which the ALJ acknowledged.[23] The Commissioner counter argues that the ALJ

11   properly considered the supportability and consistency of Dr. Genthe's opinions

12

13

14   _____

15

16   [20] Plaintiff also avers that these errors resulted in an improper determination at

17   step five.

18   [21] An ALJ must consider and articulate how persuasive she found each medical

19   opinion, including whether the medical opinion was consistent with and supported

20   by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

21   Cir. 2022).

22   [22] ECF No. 8.

23   [23] *Id.*

and that substantial evidence supported ARNP Washington's opinions.[24] The Court concludes that the ALJ erred in his consideration of ARNP Washington's opinions.

### 1.  Standard

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[25] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[26] Supportability and consistency are the most important factors,[27] and the ALJ must explain how he considered the supportability and consistency factors when reviewing the medical opinions and support his explanation with substantial evidence.[28] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and

---

[24] ECF No. 9.

[25] 20 C.F.R. § 416.920c(a), (b).

[26] *Id.* § 416.920c(c)(1)–(5).

[27] *Id.* § 416.920c(b)(2).

[28] *Id.* § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

whether the source examined Plaintiff, as well as whether the source had advanced training or experience to specialize in the area of medicine in which the opinion was being given.[29] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[30]

## 2.    Plaintiff's Testimony

On January 31, 2022, Plaintiff completed an Adult Function Report.[31] She said that she had lived with family in the past but was now living alone in a condominium unit.[32] When asked how her medical conditions limit her ability to work, she answered that she was unable to move or to leave the house, walking hurt, breathing hurt due to asthma, her back hurt when sitting or laying down, her legs and feet swelled when walking, she had frequent headaches, and she had memory loss and trouble remembering appointments or things she should be doing.[33] She said that she did not do much during the day, and would try to check on her mother or go to counseling; feed, water and care for her dogs; occasionally go fishing or to the YMCA, but that she usually stayed at home due to dealing with

---

[29] Id.

[30] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[31] AR 248-255.

[32] AR 248.

[33] *Id.*

depression and being emotional.[34] Plaintiff said her parents cooked dinner several times a week, and that she would feed, water, and take her dogs out 3 to 4 times a day but sometimes had help from her sister.[35] She said that it was hard for her to take care of her home and vehicle and that she did not sleep much and had difficulty waking when she did sleep.[36] Plaintiff said that she had problems with the following personal care: putting on shoes, socks, and pants; getting into the tub; washing her legs and feet; styling her hair; using the toilet; and pushing the pedals when she drove.[37]

Plaintiff said she used her phone to remind her to take her medication.[38] She said that she prepared meals daily but it takes longer because she needs to sit and that she has burned food because she is not able to focus.[39] She said that occasionally she will do housework and yard work and that this includes dishes, laundry, sweeping, mopping, caring for her dogs, and watering the strawberry

---

[34] AR 249.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] AR 250.

[39] *Id.*

garden.[40] When she does these things, it takes all day to complete.[41] She said that she goes out to take the dogs out but it is hard to face people.[42] She can go out alone and she will walk, drive a car, or ride in car when she goes out.[43] She shops in stores for staples and is able to pay bills and handle a bank account but does not do well counting change.[44]

Plaintiff said her hobbies are watching TV, playing games on her cell phone, doing her hair, and fishing.[45] She said that her TV is always on and she plays games often, and that she will spend time with others either talking on the phone or texting at least once a week.[46] She needs to be reminded to go to places and tries to go to the gym and her parents every day.[47] She has problems getting along with others and thinks they take things from her so she stays home when possible.[48] Plaintiff said her conditions limit her ability to lift, squat, bend, stand, walk, sit,

---

[40] *Id.*

[41] *Id.*

[42] AR 251.

[43] *Id.*

[44] *Id.*

[45] AR 252.

[46] *Id.*

[47] *Id.*

[48] *Id.*

kneel, climb stairs, see, remember, complete tasks, concentrate, follow instructions, and get along with others due to severe pain and depression.[49] She said that her ability to walk or pay attention depend on whether it is a good day or a bad day and that she can "sort of" follow written or spoken directions.[50] She said that she handles stress well but does not handle changes in routine well and that she does not want to leave the house and has no motivation to get things done.[51] She wears glasses or contact lens and has been prescribed albuterol.[52]

      3.   <u>Relevant Medical Records</u>

          a.  <u>*ARNP Washington*</u>

On February 25, 2022, Marquetta Washington, ARNP, examined Plaintiff at the request of the Commissioner.[53] ARNP Washington noted that Plaintiff presented with complaints of knee issues, mental health issues, and breathing issues; and that she reviewed a psychiatric evaluation performed on December 14, 2021, by Renai Allen of Comprehensive Healthcare.[54] Plaintiff's conditions were a knee issue that started several years prior and progressed to a dull pain that was

---

[49] AR 253.

[50] *Id.*

[51] AR 254.

[52] AR 254-255.

[53] AR 442-450.

[54] AR 442.

8/10, triggered with walk and resolved with rest; as well as breathing issues since age 2, triggered by cold weather and relieved by albuterol.[55]

Plaintiff reported a past history of migraines and pain in her knees; a 12th grade education in special education; work as a CNA; and substance abuse that consisted of methamphetamine use in remission for 7-8 years, occasional alcohol consumption, occasional use of cannabis with the last use a week prior, and vaping 2-3 times a day.[56] Plaintiff reported that she is able to dress and bathe, climb a flight of stairs, complete housework, prepare meals on the stove and in the microwave, shop 2-3 times month, drive herself, play video games, visit her parents twice a week, and care for her 2 dogs.[57] She was casually dressed with good hygiene, walked steadily, could get on and off the table without difficulty, was able to sit and stand, could take off her shoes and socks without help, could make a fist and touch her thumb to the tip of all fingers, and pick up a coin.[58] Her respiration was even and unlabored and her chest and lungs were clear throughout.[59] Tinel's and Phalen's were negative and her musculoskeletal examination was within

---

[55] *Id.*

[56] AR 443.

[57] *Id.*

[58] AR 444.

[59] AR 445

normal limits.[60] Her station was stable and her gait was not antalgic, she could tandem walk, walk on her toes, stand on either foot, and walk on heels with difficulty due to knee pain.[61] She did not want to hop due to poor balance and could squat 1/3 way due to knee pain.[62] Motor strength was normal, straight leg raising was negative, sensation was intact, deep tendon reflexes were 2+, and there was no muscle tenderness or trigger points.[63]

ARNP Washington diagnosed morbid obesity, umbilical hernia, and asthma.[64] She opined that Plaintiff can lift and carry 25 pounds occasionally and 10 pounds frequently, push and pull 25 pounds, sit for 6 hours in an 8-hour day, stand and walk 6 hours in an 8-hour day.[65] She opined that Plaintiff has no limitation in climbing stairs, stooping, bending, and balancing but can never climb a ladder, crawl, kneel or crouch.[66] She opined that Plaintiff has no limitations in fine motor skills, overhead or forward reaching, or in vision, hearing, and speech.[67]

---

[60] AR 445-446.

[61] AR 446.

[62] *Id.*

[63] *Id.*

[64] AR 447.

[65] *Id.*

[66] AR 447-448.

[67] AR 448.

As to environmental limitations, she opined that Plaintiff has no limitation to working on heights, working around heavy machinery, working around noise or working with vibration; but can never work around extreme temperatures, gases, dust, or fumes.[68] She opined that Plaintiff would have no limitation in traveling in a car or using public transportation.[69]

b. _Dr. Genthe_

On September 22, 2022, Plaintiff was examined by Thomas Genthe, PhD, at the request of the Washington State Department of Social and Health Services .[70] The examination was performed via a telephone call.[71] Plaintiff reported to Dr. Genthe she was not employed due to swelling in her feet and legs, high blood pressure, and the fact that she had been a hoarder since she was nineteen years old.[72] In her interview Plaintiff reported that she was single, lived in a rented apartment, had no significant difficulty getting along with others, had never been psychiatrically hospitalized, and had received mental health treatment in the past but was not currently in treatment or on medication.[73] She reported a history of

---

[68] AR 448-449.

[69] AR 449.

[70] AR 522-530.

[71] _Id._

[72] AR 522.

[73] AR 522-523.

special education and graduating from high school.[74] She said she used marijuana daily with "6 bowls a day" since she was nineteen years old.[75] Plaintiff said she could care for her hygiene and prepare her own meals and that she spent her time watching TV or fishing.[76] She reported that she could perform household chores, take her own medications, schedule appointments and keep them, and show for groceries or personal needs.[77] Dr. Genthe diagnosed major depressive disorder; hoarding disorder; attention deficit/hyperactivity disorder, combined presentation; personality disorder (rule out); and cannabis use disorder, severe.[78]

Dr. Genthe performed a mental status examination.[79] Dr. Genthe noted that the amount of detail provided by Plaintiff was excessive, although she spoke at a normal rate and volume.[80] Plaintiff was open and cooperative and reported her mood as depressed; presented with logical, coherent and goal-directed thoughts, although she was tangential and circumstantial; was oriented to person, place, and

---

[74] AR 523.

[75] *Id.*

[76] *Id.*

[77] AR 524.

[78] AR 525.

[79] AR 527-528.

[80] AR 527.

time; and had normal perception.[81] Plaintiff's memory was impaired, as she had difficulty following the conversation, was only able to recall one of four words after delay; could only recall two of three activities the day prior; and could only answer two of three questions involving long-term memory.[82] Plaintiff had a limited fund of knowledge and could not name the current president, the president during the civil war, or the direction of the sun at sunset.[83] She could not perform simple math, and Dr. Genthe opined that her insight and judgement was fair to poor.[84]

Dr. Genthe opined that Plaintiff has a moderate impairment in the following activities: performing activities within a schedule, maintaining attendance, and being punctual; learning new tasks; performing routine tasks without special supervision; being aware of hazards and setting realistic goals.[85] He opined that Plaintiff has a marked impairment in the following activities: understanding, remembering, and persisting in completing detailed tasks; adapting to changes in a routine setting; communicating and performing effectively in a work setting; maintaining appropriate behavior; and completing a normal work week.[86] He

---

[81] AR 527-528.

[82] AR 528

[83] *Id.*

[84] *Id.*

[85] AR 525-526.

[86] *Id.*

opined that the overall severity of Plaintiff's combined impairments was severe.[87]

Dr. Genthe opined that the limitations were primarily the result of a substance use

disorder and that they would persist following 60 days of sobriety.[88] Dr. Genthe

recommended counseling and stated the following:

> At this time, she is unlikely to function adequately, and/or consistently
> in a work setting until her psychological symptoms have been managed
> more effectively. Given her response to treatment, and willing
> participation, a period of no less than 12 months may likely be needed
> to address her treatment needs at least moderately well, and help her
> regain the necessary emotional functioning to resume fulltime work
> related activities.[89]

4.    <u>Analysis</u>

   a.    <u>*The ALJ's consideration of ARNP Washington's opinions*</u>

As noted above, ARNP Washington examined Plaintiff on February 25,

2022.[90] She opined that Plaintiff can stand and walk 6 hours in an 8-hour day.[91]

She also opined that Plaintiff has no limitation in climbing stairs, stooping,

bending, and balancing but can never climb a ladder, crawl, kneel, or crouch.[92]

---

[87] AR 526.

[88] *Id.*

[89] *Id.*

[90] AR 442-450.

[91] *Id.*

[92] AR 447-448.

Less than a month later, X-ray imaging of Plaintiff's right knee performed by Daniel Pak, MD, on March 24, 2022, indicated osteophytes affecting all joint compartments,  moderate medial femorotibial compartment joint space loss, and patellofemoral joint space loss – indicating moderate tricompartmental osteoarthritis.[93] Moderate osteoarthritis of the knee is stage 3, and is noted to cause frequent pain when running, walking, or kneeling, as well as joint stiffness on waking, and joint swelling with extended periods of motion.[94] X-rays of the lumbar spine taken the same day also showed grade 1 anterolisthesis, but grade 1 anterolisthesis indicates that a disc has slipped by 20% or less and is associated with no symptoms or mild symptoms.[95]

Plaintiff has argued that ARNP Washington was likely unaware of the osteoarthritis because she did not include any diagnosis regarding Plaintiff's knee, despite the fact that the ALJ found the osteoarthritis to be a severe impairment.[96] The Court agrees with Plaintiff.

---

[93] AR 461.

[94] Healthline, *Stages of Knee Osteoarthritis: Symptoms & Treatments* (healthline.com) (last viewed November 21, 2024 .)

[95] Spine Info, Grades of Anterolisthesis: Understanding Severity and its Impact on Your Health. www.SpineInfo.com (last viewed November 21, 2024.)

[96] ECF No. 8.

The ALJ articulated the following reasoning in support of his reasoning in finding ARNP Washington's opinions persuasive:

> However, I also find persuasive the opinion by Marquetta Washington, ARNP (Exhibit 6F), and afford more weight this consultative examining physician opinion than to the non-examining physician State agency consultant opinion. Dr. Washington opined that the claimant could lift and carry 25 pounds occasionally and 10 pounds frequently, push/pull 25 pounds, walk/stand 6 hours cumulatively in an 8-hour day, sit 6 hours cumulatively in an 8- hour day, never climb a ladder (due to obesity), never work around extremes of temperature (due to asthma), and never crawl, kneel, or crouch (due to difficulty squatting). She has no limitations on climbing stairs, stooping, bending, or balancing. This opinion is supported by the physical examination that showed a BMI of 56 and some difficulty heel walking and squatting more than 1/3 of the way (due to knee pain) but normal range of motion throughout, normal/full motor strength of 5/5 bilaterally in the upper extremities and lower extremities, ability to tandem and toe walk, bend, balance/stand on either foot. The limitations are generally consistent with the medical evidence of record (See e.g., Exhibits 1F/15; 6F/3-5; 8F/3-4) and the State agency determination (Exhibits 1A; 3A). Thus, the above residual functional capacity finding includes limitations that encompass both the State agency determination and the opinion of ARNP Washington, reduced slightly (lifting/carrying) given the claimant's physical impairments.[97]

At no point in his analysis did the ALJ address the fact that ARNP Washington's opinion was inconsistent with the objective medical imaging showing moderate osteoarthritis of the right knee. While an ALJ need not address every piece of evidence, an ALJ "may not ignore significant probative evidence that bears on the disability analysis."[98] Moreover, the ALJ's error was compounded by the

---

[97] AR 27.

[98] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

fact that the ALJ acknowledged elsewhere in the opinion that right knee osteoarthritis was a severe impairment.[99]

While this error might not be consequential on the basis of a different record, here it is consequential. At the time of the hearing, Plaintiff was a person closely approaching advanced age.[100]  Based on her education and lack of past relevant work, an RFC indicating a limitation to the sedentary exertional level rather than the light exertional level might have mandated a finding of disability.

It is not possible to determine whether ARNP Washington would have opined that Plaintiff was capable of performing the standing, walking, and postural requirements of light exertional work had she been aware of the imaging results of March 2022. The ALJ's reliance on the opinions of the state agency physicians is also tainted because both evaluators relied in part on ARNP Marquetta's opinions when formulating their own opinions.[101]

The Court concludes that remand is warranted for development of the record to obtain an opinion from an examining source with knowledge of the objective evidence regarding right knee osteoarthritis.

> b.    _The ALJ's consideration of Dr. Genthe's opinions_

The ALJ articulated his consideration of Dr. Genthe's opinions as follows:

---

[99] AR 20.

[100] AR 28.

[101] AR 64, 84.

1
2
3
4
5
6
7
8
9
10
11

Conversely, I find unpersuasive the opinions of DSHS examining physician, Thomas Genthe, Ph.D. (Exhibit 14F/1-7) and DSHS non-examining physician, Holly Pataja, Ph.D. (Exhibit 14F/8-9). These opinions are inconsistent with the evidence received in the course of developing this case for review, to include the opinions discussed herein. The record does not support any marked limitations in mental functioning. Dr. Genthe completed a telephone interview of the claimant, and had no records to review prior to the evaluation. Thus, he had a significant lack of information from both personal observation and historical reports, and was unaware of the longitudinal picture of the claimant's psychological impairments, relying on the claimant's subjective report (i.e., what she told him on that specific day). Notably, he found the claimant's cannabis use disorder to be severe and opined that it is the primary cause of her mental health limitations. Nevertheless, he opined that she would still have such limitations after 60 days of sobriety, which I find to be inconsistent opinions. Dr. Petaja did not examine or interview the claimant, and did not review the medical evidence as a whole; she only reviewed Dr. Genthe's evaluation report. The opinions of the State agency psychological consultants are more consistent with the record, as they reviewed the record (See e.g., Exhibits 1F/5, 8, 10; 2F/47; 4F/16-17; 6F/3; 13F/12-13; 14F/4).[102]

12
13
14
15
16
17
18

In her brief, Plaintiff argues that the ALJ erred in discounting Dr. Genthe's opinions because his opinions were based on a telephone interview, which was common during the pandemic and not an unreliable source of information.[103] Plaintiff argues that the ALJ should reject, however, Dr. Genthe's opinion that Plaintiff suffered from a severe cannabis disorder because that opinion was inconsistent with the record.[104] The Commissioner counter argues that the ALJ

19
20
21
22
23

---

[102] AR 27.

[103] ECF No. 8.

[104] *Id.*

properly considered the supportability and consistency of Dr. Genthe's opinions, but urges the Court to accept Dr. Genthe's opinion that Plaintiff suffers from a severe cannabis disorder.

While the Court agrees with the Commissioner that the ALJ did not err in his reasoning that Dr. Genthe had neither an in-person interview with Plaintiff nor access to her medical records when formulating his opinions, it concludes that Plaintiff is also correct that there is a lack of clarity as to Dr. Genthe's opinion regarding substance use and whether her symptoms would continue in sobriety.

Because the Court has remanded the case with direction that the record be developed by obtaining a consultative examination regarding Plaintiff's physical impairments, it also directs that a consultative examination be obtained to determine Plaintiff's mental impairments.

5.   <u>Summary</u>

Because the ALJ erred in his consideration of ARNP Washington's opinions and the record requires additional development, a remand is warranted.

**B.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly assess her subjective complaints. As discussed above, the ALJ failed to consider the medical record as a whole when considering the medical opinions.  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the credibility of Plaintiff's subjective complaints.

**C.    Substance Abuse: The Court finds the issue moot.**

Plaintiff argues that the ALJ erred in determining that Plaintiff suffers from a cannabis use disorder.  Because the Court has remanded the case for development of the medical record, this issue will be addressed on remand and is moot.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[105] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[106]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. Therefore, the ALJ should properly consider the opinion

---

[105] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[106] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

evidence and make findings at each of the five steps of the sequential evaluation process.

### IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 16th day of December 2024.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge